Good morning. I'm here to suggest to you that while equitable tolling is a remedy that has been sparingly applied by this court and certainly by the California courts, the term sparingly does not mean never. There are circumstances where evidence is presented that would warrant and justify the application of the doctrine of equitable tolling. We believe that this case presented such circumstances and that the evidence that we presented in the court below was sufficient, one, to create a triable issue of fact for purposes of assessing the appropriateness of granting summary judgment, and two, in the event that the court, the trial court, who appears to be vested with the authority to make the determination as an equitable matter whether or not the tolling should be applied, that there was a preponderance of the evidence sufficient to allow the case to go forward to trial. I don't understand your, factually, your tolling argument. Yes, ma'am. Wasn't your client busy during the statute of limitations period filing with the administrative agencies and pursuing her claim of discrimination? There is a period of time, yes, Ms. Tatum filed, I believe, an EEOC charge. First she lodged her complaint with the department. Then she filed an EEOC charge in April of 2005, Your Honor, which was more than nine months after she left the job, almost a year. And then subsequently she filed a charge that same month in April with DFEA. Is your argument that some period of time should be added on at the end? I mean, is that how you think equitable tolling should work? No. My understanding is that the way tolling works when that, however it's termed, is that during the period of incapacity, and I'm using that term loosely, the statute stops running. It is tolled. Okay. So your view is that time is added on to the end, that the time is extended. Yes. When you calculate the time, you cannot include the period of time that where the statute has been tolled. And it's our argument that for these purposes, because her actual complaint was only filed 18 days after the statute ran under 1983, the two year, well, it's the two-year California statute, that the tolling period, as long as it's more than 18 days, she's entitled to be able to pursue her claim. So if you're looking at it in terms of adding time on, you're adding, we're suggesting that you have to add on 18 days. I suppose there's other views of the equitable tolling that if the person has a substantial amount of time after a period of disability, we'll call it, to file a claim that that's enough. I don't, I'm not aware of cases that would interpret it in that way. Equitable theory. True. There's no statute that says this is how you toll. True. That's true. There's no statute. And the cases look at, obviously, what the period of time was. And I think that's where the trial court in this case ran afoul of it, because he didn't look at what period of time. He seems to suggest that she had to be established that she was incapacitated for the entire period of time. And that's not the law. So what's your period of tolling? What are you arguing for? Eighteen days. And if one, I. . . Measured from what day to what day on this record? Measured from June the 9th until the period of time, I think, the earliest. Well, the record is not clear at what point Ms. Tatum became able to be capable of being taken care of. When do you contend that she became able to file? Well, I believe our best estimate would be approximately six months. Dr. Green talks about a period of time where she appears to become somewhat better. But, again, for our purposes, up until, I think the first interview that she had with Dr. Perna, I know the first interview she had with Dr. Perna was in September of 2004. You see the problem with this approach? It would make a court, any plaintiff could come in and say, well, I missed the statute by two days, but there were two days during the last two years or three years or whatever when I was sick and couldn't do anything. Therefore, you must add those two days on. That's the problem with that approach. It would make every statute of limitations case have to have some kind of factual assessment of how the plaintiff was feeling during the whole period. So that's the problem with doing it that way, isn't it? No, because it's not simply how the plaintiff was feeling. You have to have evidence. Again, this is not a, you have to have evidence. And, again, it's the court, every case, when you make a claim for equitable tolling, yes, the court has to look at what the facts are. When there's a motion for summary judgment, the court has to look at what the facts are. If a plaintiff came in and said I was sick for two days and she didn't have the kind of evidence that we had, then obviously it's, to me, it's obvious that it's fairly straightforward and simple. I think that in the cases where the court has denied the application of equitable tolling, it has been fairly straightforward and simple. So you're, you don't have, you're not making any claim here that she was insane under California law? We are, because that's what the statute says. Okay, so two things, equitable tolling and statutory tolling, two different claims you're making. Yes, Your Honor. Okay. The insane as the term is not insane in the colloquial sense. So in the statutory tolling, it's seen from the cases I looked at that the standard for insanity is pretty high. So the court are talking, and Feely was talking about being in a coma. And in Hsu, they were saying, well, if you have lucid intervals, then you're not deemed to be insane. So it seemed to me that you needed to show us 18 days under that statutory theory when your client was equivalent or analogous to being in a coma. And I didn't see any evidence specifically going to that. There were, there was some doctor medical evidence about she was depressed, she wasn't functioning well. But it didn't seem to reach that level. So what's the best evidence for 18 days of something analogous to a coma? I don't know that there. It's kind of tough on this record, isn't it? I mean, it's tough on this record to get to that evidentiary level, isn't it? I think to get to a coma, because I think to me a coma is not simply a mental incapacity. It's a physical incapacity. I think in Hsu or that case as well, we're talking about, yes, we're talking about a higher standard or a more severe level of incapacity that involves some physical injuries. To the extent that the evidence that we presented of someone that I would direct you to the declaration of her husband, her sister, where they describe someone being, not getting out of the bed and being curled up in the bed in a fetal position and not, simply just not being able to function. That was the evidence, and there was no disputing evidence. No, we're not saying that she's in a coma. We're not saying, but I'm suggesting to you that that level of incapacity is not the test. Those are examples that the Court has found compelling in those particular cases. But in any case, the Court is, the plaintiff is entitled to present the evidence, and the Court has to assess the evidence. And in this case, because we're on summary judgment, the Court has to look at the evidence in the light most favorable to the plaintiff and make a determination in that way. Well, the issue, it seems to me, is because clinical depression is a serious problem. We all understand that. But the courts have been reluctant to equitably toll or statutorily toll cases based on depression alone. Do you have a good case that says that depression by itself is sufficient to toll the statute? No. And I don't think, I think because you have to look at the totality of the circumstances. You're not, there's no one factor that the courts have looked at or have even stole, I think, which is obviously the gold standard in this district, in this circuit, is overwhelming, there was overwhelming evidence. But that is not to say that every case has to have depression or every case has to have rape or every case has to have overwhelming evidence. You have to look at the facts of this case and the evidence in this case, which is that which was presented and it was entitled to be interpreted in a manner that was most favorable to her, particularly where there was no countervailing evidence. To say that we can't, everybody has to be depressed is not the standard, or everybody has to be in a coma is not the standard. Might we turn to the retaliation claim for a minute? Yes. One of the things that puzzled me about the retaliation claim was this. She was offered a transfer. Your client, as I recall, put an affidavit saying it paid less or was less desirable. Could you explain that to me? Certainly. It paid less due to some of the, it's, she would not have a way of knowing the State sets the inmate pay and the pay varied on the location. So she was aware that it would pay less. I don't know how much less. I don't think that's in the record. I thought it was less because she wouldn't get the bonus for working with the inmates. There was a component of it was the inmate pay for sure. And, again, that wasn't quantified. Additionally, from her perspective, the duties of the job were particularly different and were not consistent with her efforts to try to advance within the department or within her job classification. Was it a different job classification? I wasn't clear about that because they seemed to, the employer seemed to indicate it was they were offering her the same job classification. She was just going to be doing different things because it was a different facility. But was it a different, was it a lower job classification? I think it was the, my recollection is that it was the same job classification but a different type of assignment. And that may have been because it was a different facility. But it was the type of assignment that she would not have normally taken, that she would not, she did not view it as something that would lead, that would assist her in her efforts to advance her career. And she was offered this as an accommodation, right? She was offered this as an accommodation. So what's your theory about it being causally related to a protected activity? Her protected activity was filing a complaint of sexual harassment against this person, Jensen and Zake. But given that it was really an accommodation, I don't understand your theory about how that was, could be considered a retaliation for filing the complaint. Well, because at the heart of the problem is the conduct that she complained about. But for the harassment by Jensen and Zake, she would not have required accommodation. And so she's put in this position where because they have created a hostile work environment for her, the only remedy for her is for her to be placed in a different position at a different institution. That on its face is a causal link. Let's say, let's say that it turns out that they say, all right, we'll give you the bonus pay, we'll give you this, the terms and conditions are the same. You really, I would think that that's not a retaliation to make an accommodation that's equivalent, right? Well, it's, and I cited Ellison v. Brady because it's the same kind of thing. The accommodation in that case was we will move you to another office to get you away from the person who is harassing you. In this case, Ms. Tatum's doctor says she cannot be placed in another situation where this person, where she is exposed to this person. So the remedy in both of those cases was to move the plaintiff. And in Ellison v. Brady, this Court said no, that's not an appropriate remedy for sexual harassment. Here the employer is not even pretending to be trying to come up with a remedy for sexual harassment. I thought the only remedy was to move the supervisor, right? Yes. And that's, and so that's by your theory. There was a finding that this person had engaged in some serious misconduct that resulted in a disabling condition of an employee. That is a serious adverse finding for the Department. It is not a serious adverse finding for Ms. Tatum. It is not her fault that she is subjected to that. Therefore, it's not proper. And if the only reason why she is having to be moved to a lesser position is because of what they did to her and because she complained about it and because there's a finding that her condition was caused by what they did, that on its face to me is a causal link. You have a little less than half a minute left. Do you want to save it for rebuttal? Yes, Your Honor.  Thank you. Thank you. Thank you. Good morning, Your Honors. Michael Gow for the appellees. There's no evidence in the record whatsoever that Ms. Tatum was mentally incapacitated, either for two years, for six months, or as Ms. Tatum has argued here on appeal and in the court below, for about a three-month period between June 9th, 2004, and September 1st, 2004. It's undisputed that Ms. Tatum was actually represented by her counsel, Mr. Rankin, since September 16th, 2004, when Mr. Rankin filed on her behalf a Workers' Compensation Appeals Board appeal. That's on page 259 of the record. So it's really Ms. Tatum has focused both below and on appeal on those three months, roughly, to find, to ask the court to find 18 days to extend the limitations period. And there is absolutely no record, there's nothing in the record that supports mental incapacitation. To the contrary, it shows that Ms. Tatum has been active, actively pursuing some sort of informal resolution to her workplace concerns. So starting as early as September, excuse me, June 9th, 2004, the first day she alleges that she was mentally incapacitated, she calls a state senator's office, now Congresswoman Jackie Speier's office, and engages in a lengthy conversation with one of her staffers regarding her workplace concerns. But she wants an investigation, she needs help intervening from the state senator's office to help her not have to work with Mr. Jensen, Mr. Zay, and to have to be in the proximity of a convict with a sexual assault conviction. So on her first day of reported mental incapacity, she's on the phone with the state senator advocating for her case. A week later, on June 14th, she writes a letter to the head of the entire institution, Warden Schwartz, telling Warden Schwartz that she needs an investigation into Jensen Zay's conduct, that she wants to meet with Warden Schwartz, and that she wants to return to work as soon as possible, in her words. About a week after that, she's on the phone with the CMF return-to-work coordinator asking about her benefits. What about leave credits while I'm off on workers' compensation leave? And at the end of that month, on June 30th or so, she actually goes to CMF and meets with Warden Schwartz to discuss the investigation that she would like to see into Jensen and Zay's conduct, talk about maybe returning to the institution and working in the personnel department. So in that critical first few weeks after leaving CMF, she's actually advocating to return to CMF, return to CDCR for work, and she's advocating for some sort of investigation into her coworkers' conduct. By the end of that period, in September of 2004, she's evaluated by a Dr. Datta, whose report the workers' compensation judge relied on exclusively or almost exclusively to make the determination that she was temporarily totally disabled. And Dr. Datta, in his report, notes that Ms. Tatum told him that as soon as she left CMF, she felt much better, that because she was no longer interacting with Mr. Jensen, Mr. Zay, her physical symptoms of stress had gone away completely or significantly decreased, and that based on that, Dr. Datta has concluded that Ms. Tatum, as long as she's not interacting with Mr. Jensen, Mr. Zay, she has no stress. And it's undisputed that she did not meet with Mr. Jensen or Mr. Zay during this period of time, June 9th through September 2004. And by the end of that timeframe in September, she's telling Dr. Datta she wants to return to work. She feels better. So there's absolutely nothing in the record that shows or indicates tolling at all. And this is a very stark contrast to Ms. Stoll, the one decision in this circuit where this Court has held that mental incapacity should toll the period of limitations. There's no limitations problem with the retaliation claim, right? Because that's based on, I guess, the not giving her the accommodation she wanted when she returned to work, which I guess the accommodation would be return to her old position, but not have those supervisors there. That's correct, Your Honor. There is no limitations argument with respect or problem with the retaliation. Okay. Can you clarify what the situation is with regard to the job she was offered? Sure. The job she was offered was an office assistant position, the same statewide classification that she had at CMF. Okay. The same job classification. That's correct. It is true it had different duties perhaps related to it, but overall the same job classification. It was offered to her to work at CSP Solana, which is about a mile away from CMF. And it was something that was born out of an interactive process to accommodate her workplace restrictions. So what do you consider her workplace restrictions? Strictly to not work with Mr. Jensen and Mr. Zay, not to have those individuals as her supervisor, either indirectly or directly. Assuming, arguendo, that they were harassing her, they should have moved, not her. Well, if the Court's relying on the Ellis v. Brady argument, it's distinguishable in the sense that in Ellis v. Brady, the reason the plaintiff in that case was asked to move as opposed to the supervisor was based on the sexual harassment situation as opposed to a reasonable accommodation to workplace stress. Right. Assuming, arguendo, and again, we do not concede that there was any harassment here. To the contrary, her disability was solely based upon her representations as to what went on to the workers' compensation. Right. We're on summary judgment, so we take and consider the facts. The way the decision to transfer Ms. Tatum was born essentially was after about nine months after her alleged protected activity of being off on leave on her doctor's order, by about March or so of 2006, her doctor says she's permanent and stationary. And at first, the idea is for her to return to work at CMF. And her workers' compensation attorney, Mr. Rankin, is advocating for that. However, her doctor, Dr. Green, intervenes and says, no, she can't work with being in the proximity or under the supervision of Mr. Jensen or Mr. Zay. And so the CMF return to work coordinator calls Ms. Tatum and says, what would you like to do? He says, I don't want to return to work at CMF. In fact, as early as 2004, in Dr. Dada's report, he notes that Ms. Tatum is telling him, or excuse me, that's an addendum to his report, and later in 2005, he notes that Ms. Tatum says, I don't even want to drive down the same road CMF's located on. So she doesn't want to return to CMF regardless. So when we get back to March 2006, and there's a question of whether or not she should return. Ginsburg-McGill. Did she say, get those supervisors out of there and I'll go there? I'm sorry? Did she say, get those supervisors out of there and I'll go there? No, Your Honor. In the record, Ms. Tatum's not saying anything about her saying, I want to go back, but for the fact that Mr. Zay and Mr. Jensen are there, I can't go back. She didn't have that sort of complaint or concern. Neither did her doctor and neither did her attorney. So at the time when CMF's return to work coordinator contacted her, she says, look, Ms. Tatum says, I would like to return to work, I'm ready to go, but not at CMF. I would like to go elsewhere. And this is reflected in the record. Does any of that have to do with the kind of prisoners she had to work with at that place or was it only the supervisors? Oh, the basis for her stress and her leave, is that what you're asking, Your Honor? No. I mean, she's not going to get this bonus over at this other place. And she's not going to get that bonus because. Right. So there's a perk attached to the position she's at CMF. Okay. Whenever she supervises inmates as clerks or something, janitors. Right. That they, that she would receive some extra money. Right. Whenever that was the case. If she's not supervising inmates, then that's not there. And her new job. Did not have, excuse me, did not, the record doesn't show that it had any such perk. Okay. So it had no, no inmate supervision function. That's correct, Your Honor. Okay. So what the record does show is that as soon as she was declared permanent and stationary and was able to return to work, CMF actively attempted to find a position. And this is looking at within CMF. And as soon as the doctor said she couldn't return to CMF, they immediately went to the next available institution that was nearby and asked, do you have any office assistant positions available? And CSP Solano returned the very office assistant position that Ms. Tatum was offered. It was only one. Did not have this perk attached to it under the record. Well, what she says is it didn't have the perk, which is a cut in pay, that it was an entry-level position that did not involve computer skills and that she would lack chance promotion because of it. All that is. That's in her affidavit, right? That's correct. So assuming that's true, why, if she can show a causal nexus to a protected action, why isn't that an adverse employment action? It's not an adverse employment action, Your Honor. First of all, it's not a cut in pay. She would receive the same salary for that position. Well, no, she's going to, she's not going to get a bonus. She's going to get less money. It's not. That's what she says. That's what she says. That's her own words. Well, you know, we have to analyze this on summary judgment. That's, so we take the record as it is, so. Or where in the record is her counter affidavit saying she's going to receive exactly the same pay, benefits and job opportunities? There is no, nothing in the record with respect to. We take, we take it from her affidavit that she's going to receive less pay. She's not going to have the same job opportunities and less chance of promotion. If I could correct. So if, assuming that, assuming that, let's take, why isn't that an adverse employment action if she can show nexus and make all the other requirements? If I understand Your Honor. Your argument is that this isn't an adverse employment action, even assuming that she's right on everything else. She says less pay, no job opportunity, it's a step downward. There's no counter affidavit. Tell me why she hasn't, if we, if that's the issue alone, why isn't that a triable issue of fact on whether it's an adverse employment action? Primarily based upon, first of all, the source of the information. It's Ms. Tatum's own uncorroborated, as the Court below recognized, statement that there would be no promotional opportunities. She wouldn't know. You didn't put a counter affidavit in. I mean, there's nothing in the record except her affidavit on this issue. So I think you're misunderstanding my question. Assuming all that's true, assuming what she says is true. I understand that. Why is it, why, why isn't that a triable issue of fact on, on whether it's an adverse employment action? So assuming that she does not have promotional opportunities, assuming she does receive, doesn't have that pay bonus, and assuming that it is less desirable work, why is that not a triable issue of fact? I would assume, if that's the only evidence that the Court is looking at, to the exclusion of, say, Ms. Sharpe-Adima's testimony, she was the return of work coordinator at CMS. Right. She did testify that it is essentially the same job. No, I understand. But that's, again, we're on summary judgment. That's, I'm just trying to understand your position on that. There are a whole lot of other hoops she's got to go through. But when, just take my reaction, you say there's, this wasn't an adverse employment action. I said, okay, same classification, maybe not. Transfers aren't necessarily an adverse employment action. She says less pay, less opportunity, less that. I don't see any other, that's a controverted fact in the record. Go ahead. If I could add just to, when you answer Judge Thomas' question, you know, this transfer was offered as a reasonable accommodation. And so can a reasonable accommodation, is it your position that a reasonable accommodation could never be an adverse employment action? Or explain how the fact that it wasn't just a transfer, it was an accommodation, would play on our analysis of the question Judge Thomas asked you. Okay. Take them, take them, because I was going to go to, that's my next question. Thank you. I mean, if you say, yeah, if it is adverse employment action, but she has other problems, that's fine. I'm just curious. I think solely on a record that showed, as Judge Thomas says you've laid out, that there would be a cut in pay, there would be a decrease in promotional opportunities. And there was a vacuum of any other evidence. And I want to make clear that there is not a vacuum, because we do have testimony from Sharpe-Edema saying that it is the same classification, it's the same pay, and she does have opportunities available to her. It's Ms. Tatum's own reaction to not going in the direction. When she says promotional opportunities, I think it's important to note it's not that she couldn't move up in that position. It's she wanted to be a personnel person. No, I understand your argument on that. And if, but I'm not a juror. Fair enough. Fair enough. So I think I understand your position. I want you to get to Judge Akuta's question. Thank you, Your Honor. It's based on the facts of this record showing that there was an interactive process during which Ms. Tatum, her attorney, her doctor, and the CMF return work coordinator were involved, it could not be deemed a adverse action in that situation, and nor could it ever be when the physician in question approves the job duties for the new position at CSP Solano. And when Ms. Tatum doesn't contest it, doesn't ask for a different position, and does herself ask to move out of the other position at CMF. And under that type of record, no, it could never be, a reasonable accommodation could never be, under that set of circumstances, taken as an adverse action, especially because the plaintiff in this situation, her physician, and her attorney all approved or did not contest the transfer. It was all borne out of finding some way to get Ms. Tatum back to work as soon as she was declared able to do so. Go ahead. So in the interactive process where this alternative job was offered, there, she didn't argue that that was adverse to her at that time? Is that, is that what the record shows? That's correct, Your Honor. I assume at the end of the day, divorcing yourself from the facts of this case, that if an accommodation were shown to be pretextual, then the fact of an accommodation doesn't necessarily let anyone off the hook on a retaliation charge. Right. I see my time's run out. May I briefly conclude? I'm asking hypothetically, not. In our facts, if an accommodation is deemed to be pretextual, is that your position? Yeah. Would that mean that it could be deemed an adverse action? Well, certainly if the record, if the Court agreed that the defendant's alleged or position that it was not an unlawful action was taken, that they had a lawful reason for the accommodation, if the Court disagreed with that in the burden-shifting analysis and did say and did find that there was pretext, the defendant would have no choice but to accept the Court's ruling on that. Any further questions?  Thank you. Thank you, Your Honor. To the extent that, as the Court has correctly pointed out, there is the evidence in the record regarding the position and whether it's materially adverse was undisputed in favor of Ms. Tatum. To the extent that the Court below felt that there was no pretext with respect to whether or not this transfer was for, quote, a legitimate reason, again, the issue is why is she being transferred. Is she being transferred because she's not able to do the work or is she being transferred, quite frankly, to accommodate the fact that the harassers had been allowed to continue working during this entire period of time when she was not allowed to work? What's your best evidence in this record that it's pretextual, that they really intended to retaliate? I think it is the information from Kathy Sharp Adema. When you look at her notes, that throughout this period of time, she is conferring with Defendant Schwartz. She is trying to determine a way to keep Ms. Tatum from being able to come back from work. And we presented that to the lower court as well. CDCER was not welcoming her back with open arms by any stretch of the imagination. This was a case that was hotly contested throughout the workers' compensation appeals process. And it was only after there was an order by the workers' compensation administrative law judge that the department was then compelled to actually allow her to come back to work. All right. Our questions have taken over your time. Any further questions from the panel? All right. Thank you very much. All right. Thank you. The case is adjourned. That will be submitted for dissemination.
judges: Restani, Thomas, Ikuta